IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ALICIA ROSE GATHA SELDOMRIDGE,

        Plaintiff,

v.                                      Civil Action No. 1:15-cv-19

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On February 2, 2015, the Plaintiff Alicia Rose Gatha Seldomridge ("Seldomridge" or "Plaintiff") filed this action for judicial review of an adverse decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claim for disability insurance benefits under Title II of the Social Security Act. ECF No. 1. The Commissioner filed her answer on April 28, 2015. ECF No. 4. The Plaintiff then filed her Motion for Summary Judgement on May 26, 2015. ECF No. 8. The Commissioner filed her Motion for Summary Judgment on June 18, 2015. ECF No. 10. On June 26, 2015, the Plaintiff filed a response to the Commissioner's motion. For the reasons that follow, I recommend that the Plaintiff's Motion for Summary Judgement be **DENIED** and the Commissioner's Motion for Summary Judgment be **GRANTED** because substantial evidence supports the ALJ's findings that the Plaintiff's impairments were nonsevere and the ALJ properly evaluated the medical opinions in the record.

### II. FACTS

**A. Procedural History**

In April 2011, the Plaintiff applied for disability insurance benefits ("DIB") alleging a

disability beginning on December 1, 2002. R. 246–52. The Plaintiff later amended her alleged onset date to December 1, 2010. R. 271. The Plaintiff's claim was initially denied on August 9, 2011, and upon reconsideration denied again on September 7, 2011. R. 96–97. The Plaintiff requested a hearing before an administrative law judge ("ALJ"), and, on November 13, 2012, an ALJ hearing was held before ALJ Valerie A. Bawolek. R. 33–69. Two supplemental hearings were held on May 15, 2013, and July 24, 2013. R. 70–82, 83–95. In a written decision, the ALJ found that the Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from December 1, 2010, the amended onset date, through September 30, 2012, the date last insured." R. 29. The Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review on December 9, 2014. R. 1–6. The Plaintiff then timely brought her claim to this Court.

**B. Medical History**

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's findings.

1. Physical Health History

In January 2002, while working as a server, the Plaintiff slipped and fell backward on her buttocks. R. 708, 716. Soon after, the Plaintiff entered the emergency room complaining of back pain. R. 708. X-rays were taken, and a radiologist reported "no fracture or other acute abnormality." R. 706. However, a doctor at the emergency room diagnosed the Plaintiff with acute coccydynia and a nondisplaced coccyx fracture. R. 709.

Beginning in May 2002, the Plaintiff began seeing Kalapala S. Rao, M.D., for treatment. R. 722–751. Throughout 2002, the Plaintiff reported pain in her lower back and coccyx. R. 722–27. In June 2002, the Plaintiff underwent an MRI of her sacrum and coccyx. R. 731–32. The radiologist

concluded that "there [did] appear to be some focal abnormality suggesting sequelae from prior trauma." R. 731. Results from a January 2003 spiral CT examination of the Plaintiff's lower abdomen and pelvis were "unremarkable." R. 749. A December 2008 x-ray of the Plaintiff's lumbar spine revealed "an abnormal appearance of the left transverse process" at the third lumbar vertebra. R. 437.

In July 2009, Dr. Rao examined the Plaintiff. R. 525–27. During the examination, the Plaintiff complained of neck pain stemming from a May 2009 car accident R. 525. Dr. Rao diagnosed the Plaintiff with a cervical sprain, prescribed pain medication, and ordered an MRI of her spine. R. 527. A subsequent MRI revealed previously discovered "[m]ild cervical lordosis and scoliosis," but the radiologist found "[n]o disc protusion or new abnormality . . . ." R. 529.

On June 7, 2011, Sushil M. Sethi, M.D., performed a disability determination examination of the Plaintiff. R. 497–501. Dr. Sethi noted the Plaintiff's history of "chronic back pain and pain in both wrist and hands." R. 497. Dr. Sethi reported that the Plaintiff "was under pain management with Dr. Rao nearly four years ago" and Dr. Rao "had periodically given her trigger point injections in various spots on the spine." *Id.* During the examination, the Plaintiff reported anxiety due to past abuse and family illness. R. 497–98. The Plaintiff also stated that she "has difficulty speaking with people." R. 497. Dr. Sethi noted a history "of nonspecific edema or arthritic symptoms" in the Plaintiff's ankle and a "[h]istory of stress related pains in [her] hands." R. 499. Dr. Sethi also addressed the Plaintiff's "[c]hronic back pain due to [a] worker's comp injury several years ago" and a "history of [an] old contusion of the tailbone." *Id.* Dr. Sethi diagnosed the Plaintiff with anxiety and depression. *Id.* However, Dr. Sethi concluded that the Plaintiff's "ability to work at physical activities is normal." *Id.*

On June 15, 2011, a Physical Residual Functional Capacity Assessment ("Physical RFC") was completed by Pedro F. Lo, M.D. R. 503–11. Dr. Lo noted the Plaintiff's history of back pain and trigger point injections. R. 510. Dr. Lo concluded that the Plaintiff "is able to do most [activities of daily living], although she experiences difficulty with mobility, restricted lifting at [twenty pounds], and walking distance limited to [fifteen] minutes. *Id.* Lastly, Dr. Lo stated that the Plaintiff's "[s]elf reported impairments seem disproportionate given the [medical evidence of record]. *Id.* Therefore, Dr. Lo concluded that the Plaintiff "is not fully credible and the RFC is non-severe." *Id.*

During an October 2011 examination, Dr. Rao noted that the Plaintiff's ankle and low back pain "gets worse with bending, lifting, and prolonged sitting," yet the Plaintiff "[g]ets some relief by rest and medications." R. 658. Dr. Rao noted that the Plaintiff does perform housework. *Id.* In January 2012, the Plaintiff reported leg pain and tingling. R. 656. Dr. Rao performed a straight leg rising test with negative results. *Id.* Dr. Rao diagnosed the Plaintiff with low back pain and spondylosis, recommended ice and heat treatment, and prescribed Vicodin. *Id.*

In October 2012, Dr. Rao completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)." R. 637–40. Dr. Rao found that the Plaintiff could occasionally carry twenty pounds and frequently carry only ten pounds. R. 637. Dr. Rao reported that the Plaintiff could only stand or walk for thirty minutes without interruption. R. 637–38. Because of the Plaintiff's stiffness and back pain, Dr. Rao opined that the Plaintiff could occasionally climb, balance, stoop, crouch, kneel, and crawl, but should have environmental restrictions concerning heights, temperature extremes, humidity, and vibrations. R. 638–39. Dr. Rao reported that the Plaintiff's impairments occasionally limited her ability to reach in all directions, but did not limit her ability to handle,

finger, or feel. R. 639.

2. Mental Health History

In June 2011, Paul A. Dunn, Ph.D., completed an Adult Mental Status Consultative Evaluation Report of the Plaintiff. R. 542–47. During a clinical interview, the Plaintiff reported that she gets anxious when she "is around a lot of people." R. 543. The Plaintiff noted past panic attacks and a prior history of abuse. R. 544–45. The Plaintiff reported her daily activities as having coffee with her neighbor in the morning, shopping, visiting her stepmother and father, cleaning house, cooking dinner, and watching television. R. 546. Dr. Dunn conducted a Beck Depression Inventory with the results "suggesting significant signs and symptoms of depression . . . . ." R. 544. Dr. Dunn gave the Plaintiff a Global Assessment of Functioning ("GAF") score of 65, indicating some mild symptoms. Dr. Dunn found that the Plaintiff "clearly has ongoing mild level [] depression . . . and panic attacks." R. 546. However, Dr. Dunn found that her prognosis is good and "[h]er anxiety does not keep her from going out into the community, though sometimes she likes to go shopping when there are fewer people around." *Id.*

In July 2011, James W. Bartee, Ph.D., completed a Psychiatric Review Technique. R. 559–73. Dr. Bartee concluded that the Plaintiff had a panic disorder without agoraphobia and dysthymic disorder. R. 562, 564. However, Dr. Bartee concluded that these disorders were nonsevere and the Plaintiff's "mental impairments do not impose any more than mild limitations in any of the key functional domains." R. 571.

In January 2012, Gary Stover, a licensed psychologist, completed a psychological evaluation of the Plaintiff. R. 608–16. The evaluation was based on a referral "to determine whether [the Plaintiff] meets criteria for Attention-Deficit/Hyperactivity Disorder (ADHD) . . . ." R. 608. Testing

revealed a Full Scale IQ score of 77 "suggesting overall abilities within the Borderline range." R. 612. Stover reported that the Plaintiff's testing was "indicative of anxiety symptoms being at a moderate severity." R. 613. Stover assigned the Plaintiff a GAF score of 60. R. 615. Stover found that an "assessment of cognitive functioning reflected overall abilities within the Borderline range with a weakness in the area of working memory." R. 616. Stover also noted that the Plaintiff "reported significant anxiety" and "endorsed some depressive symptoms." *Id.* Lastly, Stover concluded "that there is enough support for a provisional diagnosis of ADHD and that treatment for ADHD is warranted on a trial basis at least." *Id.*

## C. Testimonial Evidence

Testimony was taken at an ALJ hearing held on November 13, 2012. R. 33–69. The Plaintiff testified at the hearing, and Judith Brendemuehl, M.D., and John Linton, Ph.D., testified as experts. *Id.* A supplemental hearing was held on May 15, 2013. R. 70–82. Again, the Plaintiff testified, and Dr. Brendemuehl and Dr. Linton testified as experts. *Id.* A second supplemental hearing was held on July 24, 2013. R. 83–95. The Plaintiff was not present at the hearing. *Id.* Dr. Brendemuehl and Joseph Carver, Ph.D., testified as experts. *Id.* The following portions of the testimony are relevant to the disposition of this case.

1. November 13, 2012, ALJ Hearing

The Plaintiff testified first during the November 2012 hearing. The Plaintiff stated that she is married and has two adult children. R. 38. She testified that she left school during the ninth grade and does not have a GED. *Id.* She stated that she worked as a waitress in 2009 and afterward operated a café for two years. R. 39. The Plaintiff testified that she stopped operating the café because it "got to be too much, to sit down too long or to stand up for too long." *Id.*

Since 2002, the Plaintiff stated that she has visited Dr. Rou for pain management. R. 40. She has tried neck and back injections and attempted physical therapy in 2006. *Id.* She testified that she has recently managed her pain only with medications. R. 41. She stated that her pain was mostly in her tailbone, and sitting will produce a "sting" similar to "getting shot in the back." R. 47. She alleged that the pain sometimes will move down her legs. *Id.* She claimed that she can sit for nearly thirty minutes before the pain becomes too much. R. 48. The Plaintiff additionally testified that she has neck pain "at times" – especially when doing housework. R. 49. She stated that the pain feels like she pulled a muscle. *Id.* She claimed that she can only lift ten to fifteen pounds before she begins to feel neck pain. *Id.* She also stated that she her legs swell when she is sitting for a long time with her feet hanging. R. 51. She alleged that "there's no way" she could get through a day without lying down at some point during the day. R. 53.

The Plaintiff also discussed that she has, throughout life, experienced learning difficulties. *Id.* She stated that she paid for an evaluation which resulted in a diagnosis of ADD and depression. R. 54. She testified that she takes medication for these issues and the medication is helpful. *Id.* Lastly, the Plaintiff stated that she cannot sleep continually throughout the night and has difficulty falling asleep because of her pain. R. 55–56.

Dr. Brendemuehl testified next. R. 58. She stated that there were no physical impairments in the record that met or equaled a listing. *Id*. Based on the medical record, Dr. Brendemuehl stated the Plaintiff had a nonsevere RFC, however, she recommended "an x-ray of the sacrum and coccyx because . . . [the Plaintiff] talked about her tailbone being the problem." R. 61.

Dr. Linton testified after Dr. Brendemuehl. R. 62. Dr. Linton stated that no mental impairments in the record independently met or equaled a listing. R. 62. He noted that the Plaintiff

was "very intelligent" but "did seem to have some ADD." *Id.* He stated that the Plaintiff's GAF score of 65 indicated a "low normal, but typically not suggestive of an inability to function." R. 63. Additionally, Dr. Linton addressed that the Plaintiff also has "anxiety and some depression" but stressed that the Plaintiff nevertheless "worked for quite some time with all of these problems." R. 64.

## 2. May 15, 2013, First Supplemental Hearing

The ALJ explained that, prior to the supplemental hearing, she had ordered additional x-rays of the Plaintiff's sacrum coccyx, however, the "DDS refused . . . [explaining] they don't do x-rays of the sacrum coccyx." R. 72. After an opening statement by the Plaintiff's representative, Dr. Brendemuehl testified first. R. 74. Dr. Brendemuehl stated that none of the Plaintiff's complaints to her treating source physician "are consistent with an injury to the coccyx." *Id.* Dr. Brendemuehl elaborated that the only record related to "problem with the coccyx . . . [was a 2002] visit to Camden Clark . . . that she slipped, landed hard on her buttocks, and they are thinking they saw a non-displaced fracture of her coccyx." R. 74. Based on a review of the record, Dr. Brendemuehl testified that the Plaintiff's physical impairments were nonsevere. R. 75.

Dr. Linton again testified that the Plaintiff's mental impairments were nonservere and nothing in the medical record met or equaled a listing. R. 79. Dr. Linton noted that the Plaintiff "appears to have some anxiety and some symptoms of ADHD" but, based on her work history as a waitress and bartender, he believed the record is "inconsistent with the picture of being anxious in social situations." *Id.*

After Dr. Linton, the Plaintiff testified. R. 80. The Plaintiff reiterated that whenever she sits flat, her tailbone hurts. *Id.* The Plaintiff stated that she additionally experiences pain down her leg.

R. 80. The Plaintiff described the pain as "a strong stinging, but yet, a pressure pain" that is "unbearable at times." R. 81.

At the end of the hearing, the ALJ requested additional briefing and left the record open for twenty days. R. 82.

### 3. July 24, 2013, Second Supplemental Hearing

After additional briefing by the Plaintiff's representative and the introduction of new evidence, the ALJ held a second supplemental hearing. R. 85. Dr. Brendemuehl testified first. R. 86. Dr. Brendemuehl discussed that the new, objective medical evidence added to the record did not support that the Plaintiff suffers from a severe physical impairment. R. 87–89. Testifying about the new evidence submitted to the record, Dr. Brendemuehl explained that the x-rays from the time of the first fall revealed a normal sacrum and coccyx, a 2002 MRI revealed "trauma" but not a fracture, a 2003 CT scan demonstrated no musculoskeletal abnormalities, a 2006 examination suggested tailbone pain but the Plaintiff was working at the time, Dr. Rau's records indicate no physical examination of the Plaintiff's coccyx, a 1992 medical article submitted is not a medical record, and all other newly submitted evidence did not reference the Plaintiff's tailbone.

Dr. Carver testified next, opining that there is no medical evidence of any severe mental impairment. R. 92. Dr. Carver stated that the Plaintiff's January 2012 GAF score of 60 indicated only moderate difficulty functioning. R. 94. Lastly, Dr. Carver noted that the Plaintiff "had a traumatic experience . . . that seems to be fading away . . . ." *Id.*

## III. ALJ FINDINGS

In determining whether Warner was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520. The first step in the process is determining

whether a claimant is currently engaged in substantial gainful activity. §§ 404.1520(b). If the claimant is not engaging in substantial gainful activity, then the second step requires the ALJ to determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. §§ 404.1520(c). If the claimant has a severe impairment or combination of impairments, then the analysis moves to the third step in the sequence, which requires the ALJ to determine whether the claimant's impairments or combination of impairments meets or equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). §§ 404.1520(d). If an impairment meets or equals a listed impairment, the claimant is disabled. *Id.* However, if the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite the limitations of his impairments. §§ 404.1520(e). After determining the claimant's RFC, the ALJ must determine, at step four, whether the claimant has the RFC to perform the requirements of his past relevant work. §§ 404.1520(f). If the claimant does not have the RFC to do his past relevant work, then he has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, at the final step in the process, that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experiences. §§ 404.1520(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir.1983).

Here, as a preliminary matter, the ALJ determined that the Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2012. R. 22. Next, at step one of the sequential process, the ALJ found that the Plaintiff "did not engage in substantial gainful activity during the period from her amended alleged onset date of December 1, 2010, through her date last

insured of September 30, 2012." *Id.* At step two, the ALJ concluded that the Plaintiff "had the following medically determinable impairments: chronic back strain, diabetes mellitus, anxiety disorder, and attention deficit disorder." *Id.* However, the ALJ found that the Plaintiff "did not have an impairment or combination of impairments that significantly limited [her] ability to perform basic work." *Id.* Thus, because the ALJ did not find that the Plaintiff suffered from any severe medically determinable impairment, the ALJ did not continue to step three of the five-step sequential evaluation process and concluded that the Plaintiff was not under a disability "at any time from December 1, 2010, the amended onset date, through September 30, 2012, the date last insured." R. 29.

## IV. MOTIONS FOR SUMMARY JUDGMENT

### A. Contentions of the Parties

In her motion for summary judgment, the Plaintiff first argues that the ALJ "erred at step two of the sequential evaluation process when she incorrectly determined Plaintiff's chronic back strain, coccydynia, and attention deficit disorder were non-severe impairments." ECF No. 9 at 8 (footnote number omitted). The Plaintiff argues that the record demonstrates that these impairments affect her ability to work and are severe. *Id.* at 8–15. Next, the Plaintiff contends that the "ALJ erred in giving 'no significant weight' to the opinion of Plaintiff's treating physician Dr. Rao, while assigning 'great weight' . . . to the opinion of a non-treating medical consultant." *Id.* at 20. Consequently, the Plaintiff claims that the ALJ failed to comply with "applicable regulations and rulings." *Id.*

The Commissioner argues that "[s]ubstantial evidence supports the ALJ's step two finding that Plaintiff did not have a 'severe' impairment and, therefore, was not disabled." ECF No. 11 at 9. The Commissioner stated that the ALJ's decision explained that the Plaintiff's impairments were

not severe because they "imposed no more than minimal effect on Plaintiff's ability to perform basic work activities for 12 consecutive months." *Id.* at 10. Additionally, the Commissioner contends that "[b]ecause Dr. Brendemuehl's opinion that Plaintiff did not have a 'severe' physical impairment was consistent with the evidence as a whole, the ALJ was entitled to give it more weight than Dr. Rao's opinion." *Id.* at 15.

**B. The Standards**

1. Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable

amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

## C. Discussion

### 1. Severity of the Plaintiff's Chronic Back Strain, Coccydynia, and Attention Deficit Disorder

The Plaintiff contends that the ALJ erred at the second step of the five-step sequential evaluation process by finding that the Plaintiff's chronic back strain, coccydynia, and attention deficit disorder ("ADD") were nonsevere impairments. At this step, the ALJ will "consider the medical severity of [the Plaintiff's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). A "severe impairment" is "any impairment or combination of impairments which significantly limits [the Plaintiff's] physical or mental ability to do basic work activities . . . ." § 404.1520(c).[1] Accordingly, it follows that "an impairment(s) that is 'not severe' must be a slight abnormality (or a combination

---

[1] Basic work activity refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples include:
　　(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
　　(2) Capacities for seeing, hearing, and speaking;
　　(3) Understanding, carrying out, and remembering simple instructions;
　　(4) Use of judgment;
　　(5) Responding appropriately to supervision, co-workers and usual work situations; and
　　(6) Dealing with changes in a routine work setting.
*Id.*

of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p (citing SSR 85-28). Further, in order to be considered "severe," the impairment must last, or be expected to last, for at least twelve months. 20 C.F.R. § 404.1509.

The Plaintiff has the burden to demonstrate that her impairments are severe. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). Nevertheless, for the ALJ, "[g]reat care should be exercised in applying the not severe impairment concept." SSR. 85-28. Before finding that a claimant's impairments are nonsevere, an ALJ must perform a "careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities." *Id.* If the ALJ's "assessment shows the individual to have the physical and mental ability(ies) necessary to perform [basic work activities], no evaluation of past work (or of age, education, work experience) is needed." *Id.*

Here, the ALJ found that the Plaintiff suffered from chronic back strain, diabetes, anxiety disorder, and ADD. R. 22. However, the ALJ concluded that theses impairments, singularly and in combination, were nonsevere. R. 29. Thus, the ALJ found that the Plaintiff was not disabled. *Id.*

a. *Chronic Back Strain and Coccydynia*

The Plaintiff argues that the medical record supports that her chronic back strain and coccydynia are severe impairments. ECF No. 9 at 10. However, substantial evidence supports that the ALJ carefully examined the medical record and concluded that the Plaintiff's back strain and coccydynia were nonsevere. In her lengthy discussion of the medical evidence, the ALJ noted that the Plaintiff did suffer a coccyx injury in 2002, however, a 2003 CT scan was "unremarkable" and a 2008 x-ray 'revealed no significant restrictions." R. 24. A 2009 MRI found "no disc protrusion or

new abnormality." *Id.* An x-ray taken three years later "was normal." R. 25. Additionally, in 2009, the Plaintiff's treating physician, Dr. Rao noted that she was "functionally independent in all activities of daily living . . . [and] working and driving." R. 24. In 2011, the ALJ noted that the Plaintiff "reported her pain was a level 5/10 and that . . . medication was helping." *Id.* Further, treatment notes indicate that, in 2011, the Plaintiff "was able to do housework, had a negative straight-leg raising test, and a normal gait." *Id.* In 2012, the ALJ noted that the Plaintiff reported "no radiation of pain." R. 25. As such, substantial evidence supports the ALJ's conclusion that, although the Plaintiff "had chronic back strain . . . the normal neurological and musculoskeletal findings and mild limitation of range of motion support" that the Plaintiff's back strain and coccydynia are nonsevere. *Id.*

### b. Attention Deficit Disorder

The Plaintiff additionally argues that her ADD is a severe impairment. ECF No. 9 at 13. In evaluating the severity of mental impairments, the ALJ "must follow a special technique at each level in the administrative review process." 20 C.F.R. § 404.1520a(a). In rating the degree of a claimant's functional limitations, the ALJ must "consider all relevant and available clinical signs and laboratory findings, the effects of [a claimant's] symptoms, and how [a claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." § 404.1520a(c)(1). Under the regulations, a claimant's functional capacity is divided into four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. § 404.1520a(c)(3). If the ALJ rates a claimant's functional limitations in "the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, [the ALJ] will generally conclude that [a claimant's]

impairment(s) is not severe." § 404.1520a(d)(1).

Here, the ALJ found that "deficits associated with the [Plaintiff's] mental impairments did not impose any more than mild limitation in functioning and accordingly the [Plaintiff] had no severe mental impairment." R. 26. In accordance with special technique discussed in § 404.1520a, the ALJ found that the Plaintiff was only mildly limited in activities of daily living. R. 28. The ALJ discussed that the Plaintiff testified about having coffee with a neighbor in the morning, shopping, cooking, and watching television. *Id.* Further, the ALJ noted that the Plaintiff "reported being able to take care of her own personal needs; prepare meals; and do housework such as laundry, dishes, making beds, and dusting." R. 28–29. Next, the ALJ found that the Plaintiff was only mildly limited in social functioning. R. 29. The ALJ cited a mental status examination by Dr. Dunn that stated that the Plaintiff "made adequate and appropriately focused eye contact, engaged in conversation, and displayed appropriate social graces in general." *Id.* The report also noted that the Plaintiff spent time with her neighbor and family, drove, and shopped in stores. *Id.* The ALJ then found that the Plaintiff was mildly limited in concentration, persistence, or pace. *Id.* Again, the ALJ cited Dr. Dunn's report that found the Plaintiff's memory, concentration, persistence, and pace to be normal. *Id.* The report also discussed that the Plaintiff was capable of paying bills, counting change, maintaining a savings account, and using a checkbook. *Id.* Under the fourth factor, "episodes of decompensation," the ALJ found that the Plaintiff "had experienced no episodes of decompensation, which have been of extended duration." *Id.* Based on a review of the record, substantial evidence supports these conclusions. Thus, because the Plaintiff's first three functional areas were only considered "mild" by the ALJ and the fourth area was nonexistent, the ALJ properly concluded that the Plaintiff's ADD was nonsevere. 20 C.F.R. § 404.1520a(d).

## 2. Weight Given to the Plaintiff's Treating Physician

The Plaintiff next argues that the ALJ improperly gave "no significant" weight to the opinion of Dr. Rao, the Plaintiff's treating physician, while giving great weight to the opinions of Dr. Brendemuehl. R. 15–20.

Generally, in determining disability status, the ALJ must consider all medical opinions in the case record. 20 C.F.R. § 404.1527(b). ALJs evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. § 404.1527(c). "Courts often accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)). However, "although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). Indeed, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); see also *Evans v. Heckler*, 734 F.2d 1012, 1015 (4th Cir. 1984) ("The opinion of a claimant's treating physician is entitled to great weight and may be disregarded only if there is persuasive contradictory evidence.").

Ultimately the Commissioner is "responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability." 20 C.F.R. § 404.1527(d)(1).

Nevertheless, an ALJ must provide "good reasons" for the weight given to a treating source's opinion. § 404.1527(d)(1). SSR 96-2 further provides:

> [T]he notice of the determination or decision must contain *specific reasons* for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be *sufficiently specific* to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

*a. The ALJ Properly Afforded Dr. Rao "No Significant Weight"*

Here, Dr. Rao is the Plaintiff's treating physician.[2] In October 2012, Dr. Rao completed a "Medical Assessment of Ability to Do Work-Related Activities (Physical)." R. 637–40. In this assessment, Dr. Rao opined that the Plaintiff: (1) could occasionally carry twenty pounds and frequently carry only ten pounds; (2) stand or walk for only thirty minutes without interruption; (3) stand or walk for only sixty to ninety minutes in an eight hour work day; (4) occasionally climb, balance, stoop, crouch, kneel, and crawl, but should have environmental restrictions concerning heights, temperature extremes, humidity, and vibrations; and (5) can occasionally reach in all directions due to pain but is unlimited in handling, fingering, and feeling. R. 637–39. However, the ALJ gave "no significant weight" to Dr. Rao's October 2012 medical opinion because the opinion "is not supported by [Dr. Rao's] own treatment notes" and the opinion "appears based on the [Plaintiff's] subjective complaints and she is not credible." R. 27.

In this case, the ALJ provided "good reasons" for providing Dr. Rao's opinion "no significant weight." 20 C.F.R. § 404.1527(d)(1); R. 27. The ALJ's first reason for providing "no significant weight" to Dr. Rao's October 2012 medical opinion was because it contradicted with

---

[2] A treating physician is defined as an "acceptable medical source who provides [a claimant], or has provided [a claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [a claimant]." 20 C.F.R. § 404.1502. The Commissioner and the Plaintiff described Dr. Rao as the Plaintiff's treating physician. ECF Nos. 9 at 17; 11 at 13.

prior treatment notes. R. 27. Beginning in 2002, Dr. Rao has treated the Plaintiff for back and coccyx pain. R. 727. The ALJ discussed that a treatment noted from April 2011 noted that the Plaintiff "reported her pain was at a level 5/10 and that the medication was helping." R. 24, 520. Further, the ALJ found that the Plaintiff "has consistently reported her medications were helping with the pain." R. 24; *see also* R. 520–28. As an additional example, Dr. Rao, just three months before completing his medical assessment, found that the Plaintiff experienced pain and stiffness but noted that she "[g]ets some relief by rest and medications." R. 655. In April 2012, Dr. Rao's treatment notes stated that the Plaintiff's pain was a "4/10" and her medications were helping her pain with no side effects. R. 656. Thus, based on the ALJ's discussion and the evidence in the record, substantial evidence supports the ALJ's finding that Dr. Rao's medical opinion is contradictory to earlier medical notes.

The ALJ's second reason for affording "no significant weight" to Dr. Rao's medical opinion was due to his apparent reliance on the Plaintiff's subjective and non-credible reporting. R. 27. Although objective medical evidence of pain "is a useful indicator . . . in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [a claimant's] ability to work[,]" in many cases, symptoms, such as pain, "suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 96-7p, 1996 WL 374186 (July 2, 1996); *see also Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996) ("[B]ecause pain is subjective and cannot always be confirmed by objective indicia, claims of disabling pain may not be rejected '*solely* because the available objective evidence does not substantiate the claimant's statements' as to the severity and persistence of her pain.") (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)).

Further, "[b]ecause [the ALJ] had the opportunity to observe the demeanor and to determine the credibility of the Claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). Therefore, the Court "will reverse an ALJ's credibility determination only if the Claimant can show it was 'patently wrong'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).

In her decision, the ALJ stated that the Plaintiff's "extreme allegations and symptoms are not supported by the objective evidence of the record and indicate that she is not fully credible." R. 24. During the first ALJ hearing, the Plaintiff reiterated that her she experienced severe pain in her lower back, coccyx, neck, and legs. R. 38–53. During the first supplemental hearing, the Plaintiff described her pain as "unbearable" at times. R. 81. However, as identified by the ALJ, these contentions are contrary to the record. As the ALJ noted, the Plaintiff contends throughout the medical record that medication helps her pain. R. 24, 521–28. Additionally, Dr. Rao's records show that the Plaintiff reported her pain to be "5/10" and "4/10" in 2011 and 2012 respectively. R. 520, 656. These records appear to undermine the Plaintiff's testimony. Therefore, because the Plaintiff did not show that the ALJ's credibility determination was "patently wrong" and the ALJ's determination was "sufficiently specific," the ALJ's decision is supported by substantial evidence. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

*b. The ALJ Properly Afforded Dr. Brendemuehl "Greater Weight"*

In her decision, the ALJ afforded "greater weight to the opinions of Dr. Brendemuehl, Dr. Linton, and Dr. Carver because "they are highly qualified medical experts and their opinions are well supported by the credible evidence of record." R. 26. The Plaintiff argues that the ALJ

improperly afford Dr. Brendemuehl great weight because the ALJ failed to "properly consider[] the Commssioner's factors for weighing conflicting medical opinions." ECF No. 9 at 18.

As stated above, ALJs evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527(c). In the ALJ's opinion she discusses at length Dr. Brendemuehl's testimony and found that she was "a qualified medical expert . . . familiar with the Social Security Regulations" and her testimony was "consistent with the complete medical record" R. 27. The ALJ noted that Dr. Brendemuehl testified about the Plaintiff's medical history, the subjective complaints, how these complaints were not consistent with an injury to the coccyx, and a "normal" 2012 x-ray of the Plaintiff's lumbar spine. R. 27. Additionally, the ALJ detailed Dr. Brendemuehl's testimony of additional evidence introduced by the Plaintiff, but the evidence did not demonstrate a severe impairment because "the record contains no physical examination regarding the coccyx", x-rays confirmed a normal lumbar spine, and a 2003 CT scan revealed "no musculoskeletal abnormalities." R. 27.

The Plaintiff contends that the ALJ incorrectly stated that "Dr. Brendemuehl noted the 1992 medical article submitted by the [Plaintiff's] reprsenative did not identify its author." *Id.* The Plaintiff is correct that, during the hearing, Dr. Brendemuehl actually testified that there was no attached "CV on the author." R. 89. Additionally, the Plaintiff argues that the ALJ improperly used Dr. Brendemuehl's opinion as a "benchmark by which she measured all other medical opinions . . . ." ECF No. 9 at 18. The Plaintiff submits that the ALJ's statement that Dr. Lo's and Dr. Gomez's

opinions were "consistent with the evidence of record and the expert testimony of Dr. Brendemuehl" as proof of this "benchmark." *Id.* Nevertheless, substantial evidence supports the ALJ's finding affording Dr. Brendemuehl's opinion great weight, and her opinion was not used as an improper "benchmark." In her opinion, the ALJ clearly and specifically stated her reasons and rationale for providing Dr. Brendemuehl's testimony great weight. The ALJ discussed the record, the relevant testimony, the consistency of Dr. Brendemuehl's testimony with the medical record, and Dr. Brendemuehl's status as a "qualified medical expert . . . familiar with the Social Security Regulations." R. 25–27. The ALJ's decision clearly shows that Dr. Brendemuehl's opinion was not used as a benchmark and the great weight was provided to medical experts considering the factors provided in 20 C.F.R. § 404.1527(c).

## V. RECOMMENDATION

For the reasons appearing above, the undersigned finds that the ALJ's decision was based on substantial evidence, and **RECOMMENDS THAT** the Plaintiff's Motion for Summary Judgement, ECF No. 8, be **DENIED**, and the Commissioner's Motion for Summary Judgment, ECF No. 10, be **GRANTED**.

Any party who appears pro se and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474

U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

DATED: September 9, 2015                    /s/ *James E. Seibert*
                                            JAMES E. SEIBERT
                                            UNITED STATES MAGISTRATE JUDGE